USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/23/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN PABLO CHAVEZ,

            Plaintiff,

  - against -

THE BRITISH BROADCASTING CORP. et al.,

           Defendants.

17cv9572 (JGK)

MEMORANDUM OPINION AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Juan Pablo Chavez,[1] brings this action pro se under 17 U.S.C. §§ 101 & 106A, 15 U.S.C. § 1125(a), and New York General Business Law § 360-1 against The British Broadcasting Corporation ("the BBC") and its employees Craig Fancy, Anna Bressanin, and Ilya Shnitser. The plaintiff alleges claims of copyright infringement, violation of the Visual Arts Rights Act, trademark infringement, unfair competition (under both the Lanham Act and New York law), trademark dilution under New York law, and false designation of origin under New York law. The plaintiff's claims arise from the defendants' use of music composed and performed by the plaintiff in a short documentary. The defendants move to dismiss the plaintiff's amended complaint

---

[1] The plaintiff asserts that the real party in interest in this case is one of his companies, TSE Management LLC. (See Dkt. No. 40 at ¶ 21.) However, TSE Management is not a plaintiff in this case, and a corporation cannot be represented pro se in federal court. U.S. v. Twenty Miljam-350 IED Jammers, 669 F.3d 78, 91 (2d Cir. 2011).

under Federal Rule of Civil Procedure 12(b)(6), arguing that (1) the plaintiff does not own a valid copyright registration for the music, (2) their use of the music was nominative fair use, (3) the unfair competition and false designation of origin claims are redundant, and (4) the plaintiff's brand is not strong enough to be diluted.[2]

For the reasons explained below, the defendants' motion to dismiss is **granted**.

## I.

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a

---

[2] The plaintiff initially failed to respond to the defendants' motion to dismiss his amended complaint. In an August 10, 2018, Order, the Court extended the plaintiff's time to respond to the motion and indicated that if no response was filed the Court would decide the motion on the papers that had already been submitted. (Dkt. No. 38.) Although the plaintiff submitted two additional letters, both documents merely repeat the plaintiff's prior allegations. (Dkt. Nos. 39-40.) The Court construes these papers as opposition to the defendants' motion to dismiss.

2

claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While courts should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. A court may also consider documents incorporated by reference in the complaint as well as documents the plaintiff either had in the plaintiff's possession or had knowledge of and upon which the plaintiff relied in bringing suit. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991).

Courts are to afford pro se litigants "special solicitude," Ruotolo v. I.R.S., 28 F.3d 6, 8 (2d Cir. 1994) (per curiam), by construing their pleadings liberally "to raise the strongest arguments that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 472 (2d Cir. 2006) (per curiam) (quotation marks omitted). Accordingly, courts apply a more flexible standard when evaluating the sufficiency of a pro se litigant's complaint than when reviewing a complaint submitted by counsel. Perez v. City of N.Y., No. 14cv7502, 2015 WL

3

3652511, at *2 (S.D.N.Y. June 11, 2015). This liberal pleading standard, however, "does not excuse a pro se plaintiff from providing sufficient factual allegations that state a plausible claim." Tyler v. Argo, No. 14cv2049, 2014 WL 5374248, at *2 (S.D.N.Y. Oct. 10, 2014). A pro se plaintiff's complaint may be dismissed for failing to state a claim upon which relief can be granted. Id.

## II.

The following facts are taken from the amended complaint and are accepted as true for purposes of the motion to dismiss.

The plaintiff, who also goes by the stage name Johnny Arco, is a violinist and performer. (Am. Compl. ¶ 16.) The plaintiff claims to be the "owner and/or exclusive United States licensee of the rights in sound recordings, visual arts works, service-marks and audio-visual works embodying such recordings and works." (Id. ¶ 2.) The plaintiff has used various entities to sell and license his work, including Johnny Arco LLC, TSE Management LLC, and GRBK Music Group. (Id. ¶ 6.) In December 2012, the defendants produced a short documentary video entitled "Seanna Sharpe on the Art of the Death-Defying Stunt" ("the Video").³ (Am. Compl. ¶ 17(a); Declaration of Jason M. Joyal

---

³   Defendant Anna Bressanin produced the Video and defendant Ilya Shnitser was the cameraman for the Video. (Joyal Decl. Ex. A.) Defendant Craig Fancy, who is Vice President of Technology at BBC's corporate affiliate in New York,

4

("Joyal Decl.") Ex. A.) The Video featured an aerial performance by Seanna Sharpe on New York's Williamsburg Bridge and featured music composed and performed by the plaintiff. (Joyal Decl. Ex. A.) The plaintiff is also seen performing in the Video on aerial silks. (Am. Compl. ¶ 17(c).)

On December 1, 2012, two days before the Video aired, the plaintiff sent the defendants a clip of his music to be used in the Video. (Id. ¶ 17(b) & Ex. C.)[4] The plaintiff now claims that the defendants used his music in the Video without his permission. The Video includes a credit reading, "music by Johnny Arco," (id. ¶ 17(d)), and the defendants do not dispute that they used the plaintiff's music in the Video. The defendants published the Video on a BBC News website on December 3, 2012, and the Video was broadcast on the BBC World News television channel. (Id. ¶ 27; Joyal Decl. Ex. A.)

The plaintiff claims to be the owner and exclusive "U.S. licensee" of certain copyrights. (Am. Compl. ¶ 25.) He does not clearly state what copyrights he is referring to or whether the music used in the Video was copyrighted. The plaintiff does

---

is not referenced in the Video or the Video's credit lines and is not alleged to have any involvement in the creation or production of the Video. (Id.)

[4] The plaintiff attached as an exhibit a screenshot of an email dated December 1, 2012, from johnnyarco@gmail.com to annbress@gmail.com and ilya.sama@gmail.com. (Am. Compl. Ex. C.) The email appears to attach an mp3 file labelled "ThisIsGoingToKillMeRnd4." (Id.) The plaintiff claims that the defendants used music from "ThisIsGoingToKillMeRnd4" in the Video. (Id. ¶ 17(b).)

5

attach an exhibit that appears to be screenshots of emails from the "Copyright Office" noting that the plaintiff submitted registration claims. (Id. Ex. D.)

In 2015, the plaintiff's three corporations, Johnny Arco LLC, TSE Management LLC, and GRBK Music Group, filed a lawsuit based on the same underlying events as alleged in this case. Johnny Arco LLC v. British Broad. Corp., No. 15cv9530 (S.D.N.Y. Mar. 18, 2016). That case was dismissed because the corporations were not represented by counsel. Id., Dkt. No. 3. The plaintiff subsequently filed this lawsuit against the same defendants.

### III.

The plaintiff claims that the defendants committed copyright infringement by using his music and performance in the Video. The defendants argue that the plaintiff cannot succeed on a copyright infringement claim because the plaintiff has failed to allege that he has a valid copyright. The defendants are correct.

To withstand a motion to dismiss, a copyright infringement claim must allege: "(1) which original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts during what time the defendant infringed the copyright." Carell v. Shubert

Org., Inc., 104 F. Supp. 2d 236, 250 (S.D.N.Y. 2000) (quotation marks omitted).

In this case, the plaintiff does not allege that the music used in the Video or his performance in the Video are copyrighted. The plaintiff does attach copies of emails showing that he filed a copyright application for his music on February 12, 2018, after this lawsuit was filed. (Am. Compl. Ex. D.)[5] However, the Supreme Court recently clarified that an application for registration of a copyright is not enough; a plaintiff may not bring a suit for copyright infringement until "the Copyright Office grants registration." Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881, 888 (2019); id. at 886-87 ("[R]egistration occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright."). Because the plaintiff has failed to allege that he owns a valid, fully registered copyright over the allegedly infringed music and his performance in the Video, his copyright claim fails.

---

[5] After the briefing on this motion was complete, the plaintiff filed a request for the Court to take judicial notice of a "copyright registration." (Dkt. No. 52.) However, the plaintiff did not file a copyright registration; he filed a document directing the Court to the docket of a case in the Northern District of Georgia where the plaintiff sued various other defendants. (Id. (citing 19cv119).) The docket entry from that court's docket that the plaintiff points to -- docket number 7 -- does not contain a copyright registration.

7

The defendant's motion to dismiss the plaintiff's claim for copyright infringement is **granted** and that claim is **dismissed**.

### IV.

The plaintiff appears to claim that the defendants' use of his performance in the Video violated the Visual Artists Rights Act ("VARA"). 17 U.S.C. § 106A.

VARA protects only <u>visual</u> art, not music or performing art. <u>Carter v. Helmsley-Spear, Inc.</u>, 71 F.3d 77, 84 (2d Cir. 1995). "VARA defines a work of visual art as 'a painting, drawing, print, or sculpture, existing in a single copy.'" <u>Id.</u> The plaintiff does not allege that the defendants used a painting, drawing, print, or sculpture that belonged to him. Therefore, the plaintiff's VARA claim is **dismissed**.

### V.

The plaintiff pleads additional federal claims for trademark infringement, unfair competition, and false designation of origin, as well as for unfair competition and trademark dilution under New York state law. (Am. Compl. ¶¶ 45, 51, 54, 57, 61.)

### A.

The plaintiff alleges that the defendants infringed his "Johnny Arco" trademark under the Lanham Act by crediting his music in the Video to Johnny Arco, his stage name. The defendants argue that their use of Johnny Arco to credit the

8

plaintiff's work in the Video does not give rise to a claim for trademark infringement based on the doctrine of nominative fair use.

In order to establish a claim for trademark infringement under section 43 of the Lanham Act,[6] "a plaintiff must establish that (1) [he] has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale . . . or advertising of goods or services, (5), without the plaintiff's consent." 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 406–07 (2d Cir. 2005). In addition, "the plaintiff must show that defendant's use of that mark is likely to cause confusion . . . as to the affiliation, connection, or association of [the defendant] with [the plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [the plaintiff]." Id. at 407 (quotation marks omitted).

---

[6] The plaintiff does not allege that the "Johnny Arco" mark is a federally registered trademark. Therefore, the Court construes the plaintiff's claim as falling under section 43 of the Lanham Act, 15 U.S.C. § 1125, which "allows suits by any person who believes that he or she is or is likely to be damaged" by the defendants' use of the plaintiff's mark even if the mark is not federally registered. Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd., 726 F.3d 62, 72 (2d Cir. 2013) (citing 15 U.S.C. § 1125(a)(1)). The defendants conducted a search of the United States Patent and Trademark Office (USPTO) Trademark Electronic Search System (TESS) and did not find any application or registration for the trademark Johnny Arco. (Joyal Decl. ¶ 3.)

9

However, the doctrine of "nominative fair use" allows a defendant to use a plaintiff's trademark to identify the plaintiff's goods or services "so long as there is no likelihood of confusion about the source of the defendant's product or the mark-holder's sponsorship or affiliation." Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC, 823 F.3d 153, 165 (2d Cir. 2016) (quotation marks omitted). Courts in the Second Circuit consider two sets of factors in nominative fair use cases. Id. at 168. First, the factors set out in Polaroid Corp. v. Polarad Electronics Corp.:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.[7]

Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 115 (2d Cir. 2009) (citing Polaroid Corp. v. Polarad Elecs.

---

[7] In International Information Systems, the Second Circuit Court of Appeals stated "that many of the Polaroid factors are a bad fit" in the nominative use analysis. 823 F.3d at 168. However, the Court stated that those nonexclusive factors should still be considered in nominative fair use cases. Id.

10

Corp., 287 F.2d 492 (2d Cir. 1961)). And second, the factors adopted in International Information Systems:

> (1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark; (2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and (3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services.

823 F.3d at 168.

Typically, the nominative fair use analysis involves questions of law and fact and determination on a motion to dismiss is premature. Int'l Council of Shopping Ctrs., Inc. v. Info Quarter, LLC, No. 17cv5526, 2018 WL 4284279, at *5 (S.D.N.Y. Sept. 7, 2018). However, "nominative fair use can support a motion to dismiss[] if the pleadings fail to allege a mark use beyond nominative fair use." Gibson Brands, Inc. v. John Hornby Skewes & Co., No. 14cv609, 2015 WL 4651250, at *4 (C.D. Cal. Aug. 4, 2015) (quotation marks and emphasis omitted).

In this case, the description of the Video read "music by Johnny Arco" and was cited in the bottom right hand corner of the webpage featuring the Video. This is plainly a fair use of

11

the mark. There is no risk of confusion about the mark because the defendants simply used the plaintiff's stage name descriptively to attribute the music to the plaintiff. The defendants' use of the mark was in good faith because the defendants only used the mark to give the plaintiff credit for his violin music, which he himself had provided. Use of the mark was necessary to identify the plaintiff's work -- indeed it would have been difficult to credit the plaintiff's music without referencing his name -- and the defendants did not use the mark in an excessive manner. Stevo Design, Inc. v. SBR Mktg. Ltd., 919 F. Supp. 2d 1112, 1124 (D. Nev. 2013) (holding that nominative fair use barred the plaintiffs trademark infringement claims where the trademarks were the plaintiffs' names and the defendant used the plaintiff's names to identify the plaintiffs); see also Tiffany (NJ) Inc. v. eBay, Inc., 576 F. Supp. 2d 463, 497 (S.D.N.Y. 2008)("[T]he mere use of a trademarked term to describe something is not enough to suggest sponsorship or endorsement."), remanded in part on other grounds, 600 F.3d 93 (2d Cir. 2010).

In short, it would be manifestly unfair to allow the plaintiff to pursue his claim for trademark infringement because the defendants gave him proper credit for his music. The defendants' use of the plaintiff's mark was a nominative fair

use, and the plaintiff's trademark infringement claim is **dismissed**.

### B.

The plaintiff also asserts claims for unfair competition and false designation of origin under Section 43(a) of the Lanham Act and for unfair competition under New York State law. The defendants argue that these claims should be dismissed because they are duplicative of the plaintiff's trademark infringement claim.

The plaintiff's claims for state and federal unfair competition and false designation of origin require the same elements of proof as the plaintiff's trademark infringement claim, except that unfair competition under New York law requires evidence of bad faith. Tiffany, 576 F. Supp. 2d at 519 ("[T]o prevail on a claim for unfair competition under New York common law, a plaintiff must couple its evidence supporting liability under the Lanham Act with additional evidence demonstrating the defendant's bad faith." (quotation marks omitted)).

In this case, the plaintiff alleges the same facts in support of these claims as he did in support of his trademark infringement claim. Therefore, the fate of the plaintiff's claims for trademark infringement, state and federal unfair competition, and false designation of origin are interconnected.

And, as explained above, the plaintiff's trademark infringement claim fails because the defendants' use of the mark was a nominative fair use. Therefore, the plaintiff's claims for state and federal unfair competition, and for federal false designation of origin also fail. See Tiffany, 576 F. Supp. 2d at 519 (holding that the plaintiff's federal and New York state unfair competition claims failed because the defendant's use of the mark was a nominal fair use).

Accordingly, the plaintiff's claims for unfair competition and false designation of origin under section 43(a) of the Lanham Act and for unfair competition under New York State law are **dismissed**.

## VI.

Finally, the plaintiff alleges a claim for trademark dilution under New York General Business Law § 360-1. He argues that the defendants' use of his "Johnny Arco" mark "diluted [its] distinctive quality." (Am. Compl. ¶ 54.) The defendants argue that the plaintiff does not allege any facts that establish that "Johnny Arco" is a strong enough mark to be diluted.

Where fair use has been established for purposes of federal law, it also applies to related state law claims. Louis Vuitton Malletier, S.A. v. My Other Bag, Inc., 156 F. Supp. 3d 425, 434 n.3 (S.D.N.Y. 2016). As explained above, the defendants' use of

14

the "Johnny Arco" mark to credit the plaintiff's work is a nominative fair use.

Moreover, the plaintiff has failed to plead a trademark dilution claim under New York law. To succeed on a claim for trademark dilution under New York law, the plaintiff must show "(1) that it possesses a strong mark -- one which has a distinctive quality or has acquired a secondary meaning . . . and (2) a likelihood of dilution by either blurring or tarnishment." Kaplan, Inc. v. Yun, 16 F. Supp. 3d 341, 352 (S.D.N.Y. 2014) (quoting Fireman's Ass'n of State of New York v. French Am. Sch. of New York, 839 N.Y.S.2d 238, 242 (2007)).[8]

The plaintiff has not alleged any facts regarding the distinctiveness of his "Johnny Arco" mark. The plaintiff states only that because of his "long, continuous and exclusive use of the mark . . . the mark [has] gained wide public acceptance and association with [the] plaintiff." (Am. Compl. ¶ 34.) The plaintiff does not plead any other facts to support his claim. These conclusory statements are insufficient to plead a claim for trademark dilution. Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease and Related Disorders Assoc., Inc., No. 10cv3314, 2018 WL 2084168, at *8 (S.D.N.Y. May 1, 2018)

---

[8] Unlike federal trademark dilution law, New York's trademark dilution law does not require a mark to be "famous" for protection against dilution to apply. Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 114 (2d Cir. 2009)

15

("Conclusory allegations that a . . . mark is distinctive, devoid of any factual support, are insufficient to state a dilution claim under New York law."); see also SMJ Grp., Inc. v. 417 Lafayette Rest. LLC, No. 06cv1774, 2006 WL 2516519, at *4 (S.D.N.Y. Aug. 30, 2006) ("Plaintiffs' allegations regarding continuity of use . . . or association do not establish the requisite level of distinctiveness in the general public."). Therefore, the plaintiff's claim for trademark dilution under New York General Business Law § 360-1 is **dismissed**.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the plaintiff's amended complaint is **dismissed**. The Clerk is directed to close docket numbers 16 and 52.

The plaintiff previously requested leave to file another amended complaint. (Dkt. No. 47.) It is unclear how the plaintiff could cure the deficiencies explained in this Order in a second amended complaint. However, if the plaintiff chooses

to file a second amended complaint, any such amended complaint must be filed by June 23, 2019.

**SO ORDERED.**

**Dated:** **New York, New York**
**May 23, 2019**

_____
John G. Koeltl
**United States District Judge**